UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANDREW M STEELE,

                  Petitioner,

     v.

DONALD HOLBROOK

                Respondent.

CASE NO. 3:15-CV-05873-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: APRIL 22, 2016

       The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge, J. Richard Creatura. The authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner seeks relief from a state conviction, thus, the petition is filed pursuant to 28 U.S.C. § 2254.

       Petitioner Andrew M. Steele seeks § 2254 habeas relief from his 2013 conviction by jury verdict for unlawful possession of a firearm in the first degree, possessing a stolen firearm, and possessing stolen property in the third degree. Dkt. 15, Exhibit 6. Petitioner raises two grounds for relief: (1) whether his statements to police and waiver of his *Miranda* rights were voluntary

and (2) whether the trial court erred in imposing a standard sentence rather than a sentencing alternative. Dkt. 8 at 6, 8. Respondent argues that petitioner has failed to show that the state court's adjudication was an unreasonable application of federal law. Dkt. 14. Petitioner did not file a reply.

With respect to petitioner's first ground for relief, the record reflects that petitioner was not subject to a custodial interrogation when he voluntarily contacted police and arranged a meeting to show police detectives where the stolen property was located. When petitioner was taken into custody, he was advised of his *Miranda* rights on two separate occasions. Thus, nothing in the record supports the conclusion that petitioner's statements were involuntary or that the state court violated clearly established federal law. With respect to petitioner's second ground for relief, petitioner has not alleged that his sentence was fundamentally unfair and thus, petitioner fails to present a federal constitutional ground for relief. Therefore, the Court recommends that his petition be denied. The undersigned also recommends denying the issuance of a certificate of appealability.

## BASIS FOR CUSTODY AND FACTS

Petitioner was convicted by jury verdict of unlawful possession of a firearm in the first degree, possession of a stolen firearm, and possession of stolen property in the third degree. Dkt. 15, Exhibit 6. On April 30, 2013, petitioner was sentenced to 159 months of confinement. Dkt. 15, Exhibit 6.

The Washington Court of Appeals summarized the facts in petitioner's case as follows:

> While Officer Joshua Deroche ate dinner somebody broke into his truck. The suspect stole a backpack containing Deroche's uniform, badge, personal handgun, and several assault rifle ammunition magazines. The handgun was loaded and operational.

The following day, Andrew Steele visited his friend, James Baldwin. Steele offered to show Baldwin a "secret." Report of Proceedings (RP) (Mar. 19, 2013) at 124. Steele then showed Baldwin a gun and a backpack. The backpack contained two rifle magazines, a pair of binoculars, and a police badge. Steele claimed he had found the backpack and gun in some bushes in Fife. Baldwin told Steele to turn in the items, but Steele refused, stating that he planned to sell the gun and backpack. Baldwin contacted the police the next morning.

Detective Stuart Hoisington visited Steele's house, contacted Steele's wife by phone, and attempted to call Steele's cell phone twice. The second time, Hoisington successfully contacted Steele by phone. Hoisington told Steele "there [were] some missing items ... and that his name had come up in the investigation as someone who might be able to help us locate them." RP (Mar. 19, 2013) at 35. Hoisington never told Steele that he had to meet with the police or that he would be arrested if he failed to do so. Steele agreed to meet with police at a grocery store.

Hoisington, accompanied by Detective Erik Timothy, went to meet Steele. Both detectives were in plain clothes, although their badges and weapons were visible. Several patrol cars were stationed in the area, but not in sight.

Steele arrived at the grocery store after the detectives and called Hoisington's phone to tell the detectives his location. Steele met the detectives and admitted he had been in possession of the stolen items, but that he no longer had them. Steele offered to show the police where he had last seen the missing items, at a truck stop in Fife. The detectives frisked Steele and placed him in Timothy's unmarked car. Steele was not handcuffed or otherwise restrained during this time, and Timothy's car did not contain a partition or cage.

Steele directed the detectives to the truck stop. He told the police the items were in a bush. The detectives took turns searching the bushes, with one detective always staying in the car with Steele. The search did not turn up the stolen property.

Following the search, the detectives asked Steele if he would be willing to accompany them to police headquarters and make a formal statement. Steele agreed to do so. At the station, Steele received *Miranda* warnings for the first time. Steele stated that he understood his rights and wished to answer the police's questions. Steele never asked to leave or to speak to an attorney and never invoked his right to remain silent.

After he gave his statement, Steele was placed in a holding cell. Approximately 15 to 20 minutes later, the police asked Steele if he could get the gun and badge back. Steele said that he could "probably get the gun and badge back" within 48

hours and asked the police if there was a reward for the recovery of the gun. RP (Mar. 20, 2013) at 209.[1]

The State charged Steele with unlawful possession of a firearm in the first degree, possessing a stolen firearm, and possessing stolen property in the third degree. Prior to trial, Steele moved to suppress "any and all statements obtained by law enforcement of the defendant." Clerk's Papers (CP) at 10. The court held a confession hearing pursuant to CrR 3.5, at which Steele testified that he understood he did not have to speak with the detectives. He explained that he spoke with them because he was "actually trying to do what [he] believe[d] was the right thing at the time." RP (Mar. 19, 2013) at 78. Steele testified that the detectives did not accuse him of doing anything wrong; "[t]hey just said [he] possibly knew where some missing items were" and Steele wanted to "clear the air." RP (Mar. 19, 2013) at 80. Steele further testified that he had heard the *Miranda* warnings many times before and knew what his *Miranda* rights were.

The trial court entered written findings of fact that: (1) Steele voluntarily agreed to meet with the detectives; (2) Steele voluntarily agreed to show the detectives where he claimed to have seen the stolen items; (3) the detectives properly advised Steele of his *Miranda* rights; (4) Steele knowingly, voluntarily and intelligently waived those rights; and (5) the detectives did not coerce Steele into saying anything to the police.

Based on these findings of fact, the trial court entered the following written conclusions of law:

> 1. The defendant was not in "custody" for *Miranda* purposes, i.e., having his freedom curtailed to the degree associated with a formal arrest, until he was handcuffed and detained after his formal interview at the police station.
> 2. Prior to that point, the defendant's interaction with law enforcement was a voluntary, consensual, and cordial social contact that was free of coercion.
> 3. Once advised of his *Miranda* rights, the defendant knowingly, voluntarily, and intelligently waived those rights and spoke with law enforcement.

CP at 72. A jury returned guilty verdicts on all three counts.

At his sentencing hearing, the State recommended a sentence of 159 months, the low end of the sentencing range. Steele requested a DOSA [Drug Offender

---

[1] The Court notes that the Washington Court of Appeals opinion does not state whether or not the stolen property was ultimately recovered and if so, how and when.

Sentencing Alternative] sentence. The trial court denied Steele's request, explaining that:

> I have a creed that I believe people can change you, but I also believe that people who have offender[ ] [scores] that exceed nine shouldn't get the benefits of leniency. Mr. Steele knew what his issues were. He knew when he asked for the last DOSA that if he didn't change his ways ... he'll be right back in the system.

> With an offender score nine plus, if you want to be an addict and you want to use, then you need to find a way to do that without stealing from other people or victimizing other people. You haven't done that. I don't feel an urge to give you a DOSA sentence to avoid a lengthy prison term. The prison term is caused by your offender score, and those are items that you created for yourself.

RP (Apr. 30, 2013) at 391-92. The court followed the State's recommendation and sentenced Steele to 159 months in prison.

Dkt. 15, Exhibit 12 at 1-4.

## STATE PROCEDURAL HISTORY

Through counsel, petitioner appealed to the Washington Court of Appeals. Dkt. 15, Exhibit 9. The Washington Court of Appeals denied petitioner's appeal in an unpublished opinion. *Id.* at Exhibit 12.

Through counsel, petitioner sought review in the Washington Supreme Court. Dkt. 15, Exhibit 13.  The Washington Supreme Court denied review without comment on April 29, 2015. *Id.* at Exhibit 14. The Court of Appeals issued its mandate on June 2, 2015. *Id.* at Exhibit 15.

## EVIDENTIARY HEARING

The decision to hold a hearing is committed to the Court's discretion.  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474.  In determining whether

relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011). "[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).

Petitioner's habeas claims raise only questions of law and may be resolved by a review of the existing state court record. Therefore, the Court finds it unnecessary to hold an evidentiary hearing.

**DISCUSSION**

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner presents the Court with two grounds for relief. In the first ground for relief, petitioner argues that the state court violated his Fifth Amendment right against self-incrimination by admitting petitioner's pre- and post-*Miranda* warning statements. Dkt. 8 at 6.

In his second ground for relief, petitioner argues that the state trial court abused its discretion when it refused to consider a Drug Offender Sentencing Alternative ("DOSA"). Dkt. 8 at 8. Respondent concedes that petitioner exhausted his habeas claims, however, respondent argues that petitioner's claims fail on the merits. Dkt. 14 at 5-6.

### A.      Fifth Amendment

In his petition, petitioner recounts the events of December 29, 2011 in which he met with two detectives, was questioned by one detective, and then went to the police station and received a *Miranda* warning. Dkt. 8 at 6. Petitioner alleges that his Fifth Amendment right against self-incrimination was violated. *Id.* Although the precise nature of petitioner's ground for relief is not entirely clear, it appears that petitioner is challenging both his pre- and post-*Miranda* statements. *Id.* Respondent argues that the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Dkt. 14 at 9.

The trial court conducted a suppression hearing and heard testimony from Detective Hoisington and petitioner. Dkt. 15, Exhibit 2. The trial court found that petitioner's statements and his waiver of his rights under *Miranda* were made knowingly and voluntarily and thus, admissible. *Id.* at 93-95.

The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  The Supreme Court has established procedural safeguards that require police to advise a criminal suspect of his rights, under the Fifth and Fourteenth Amendments, prior to commencing a custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436 (1966). However, the police are required to inform the person of these rights, commonly referred to as *Miranda* warnings, only when a person is subjected to custodial interrogation by government officials. *Thompson v. Keohane,* 516 U.S. 99, 102 (1995). *See also*

1    *Malloy v. Hogan*, 378 U.S. 1, 6 (1964) (binding on the states); *Stanley v. Schriro,* 598 F.3d 612,

2    618 (9th Cir. 2010) (*Miranda* warnings are only required where the suspect is in custody.).

3           Whether a suspect is "in custody" for purposes of *Miranda* requires application of an

4    objective test. *J.D.B. v. North Carolina,* —— U.S. ——, 131 S.Ct. 2394, 2402 (2011);

5    *Yarborough v. Alvarado,* 541 U.S. 652, 662–63 (2004). Two inquiries are necessary for a

6    determination of an individual's "in custody" status under this test: (1) what were the overall

7    circumstances surrounding the interrogation; and (2) given those circumstances, would a

8    reasonable person in the suspect's situation have felt free to terminate the interrogation and leave.

9    *J.D.B.,* 131 S.Ct. at 2402; *Yarborough,* 541 U.S. at 662–63; *Thompson v. Keohane,* 516 U.S. 99,

10   112 (1995); *Stansbury v. California,* 511 U.S. 318, 322 (1994). A person is not in custody for

11   purposes of *Miranda* if there is no "formal arrest or restraint on freedom of movement of the

12   degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125  (per curiam)

13   (*quoting Oregon v. Mathiason,* 429 U.S. 492, 495 (1977)).

14          Once the suspect is advised of his *Miranda* rights, the police may interrogate the suspect,

15   without the presence of an attorney, if the suspect voluntarily, knowingly and intelligently

16   waives his rights. *Miranda,* 348 U.S. at 444.

17          A waiver is voluntary if "it was the product of a free and deliberate choice rather than

18   intimidation, coercion, or deception[,]" and is knowing and intelligent if it was "made with a full

19   awareness of both the nature of the right being abandoned and the consequences of the decision

20   to abandon it."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  A waiver may be express or

21   implied, and its existence is determined based on the particular facts and circumstances in the

22   case.  *North Carolina v. Butler*, 441 U.S. 369, 373–75 (1979).  "Only if the totality of the

23   circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite

24

level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421 (internal quotation and citations omitted).

Likewise, the statement a suspect makes after he waives his *Miranda* rights must be voluntary to be admissible. A voluntary statement is one that is the product of a rational intellect and free will. *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). No one factor is determinative. Instead, the "totality of the circumstances" must be considered. *Crane v. Kentucky*, 476 U.S. 683 (1986). This includes both the characteristics of the accused and the details of the interrogation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

A state court's subsidiary factual determinations underlying the issue of voluntariness are entitled to a presumption of correctness and its conclusions entitled to great weight. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). *See also Derrick v. Peterson*, 924 F.2d 813, 823 (9th Cir.1990) ("[A] state trial court's determination that a defendant knowingly and intelligently waived his *Miranda* rights is entitled to a presumption of correctness pursuant to section 2254(d)."). However, the ultimate issue of voluntariness raises a legal question requiring independent federal determination. *Miller,* 474 U.S. at 112.

In determining whether a confession was voluntary the Court must consider whether, "the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Derrick,* 924 F.2d at 817. Whether a confession is voluntary within the meaning of the Due Process Clause "turns as much on whether the techniques for extracting the statements, as applied to this suspect, are compatible with a system that presumes innocence and assures that a conviction will not be secured by inquisitorial means as on whether the defendant's will was in fact overborne." *Miller,* 474 U.S. at 116.

1    The Washington Court of Appeals rejected petitioner's claim that his statements should

2  have been suppressed:

3       Steele argues that the trial court erroneously admitted his pre- and post-*Miranda*
         warning statements in violation of his right against self-incrimination. The State
4        argues that until the police handcuffed Steele, he was not in custody and that the
         trial court correctly admitted the statements. We agree with the State and affirm
5        the trial court.

6    A.  Standard of Review

7       The Fifth Amendment to the United States Constitution and article I, section 9 of
         the Washington Constitution guarantee a defendant's right against self-
8        incrimination. *State v. Easter,* 130 Wn.2d 228, 235, 922 P.2d 1285 (1996). The
         two provisions are given the same interpretation. *Easter,* 130 Wn.2d at 235. In
9        order to effectuate these provisions, law enforcement must advise a suspect of his
         *Miranda* rights whenever the suspect is subjected to a custodial interrogation by
10       an agent of the State. *State v. Sargent,* 111 Wn.2d 641, 647, 762 P.2d 1127
         (1988). Here, the issue involves custody.

11

12       Whether a suspect is in custody is a mixed question of law and fact. *State v.
         Solomon,* 114 Wn. App. 781, 787, 60 P.3d 1215 (2002) (citing *Thompson v.
         Keohane,* 516 U.S. 99, 112-113, 116 S.Ct, 133 L.Ed. 2d 383 (1995)); *cf. State v.
13       Rankin,* 151 Wn.2d 689, 709, 92 P.3d 202 (2004) (whether or not a suspect is
         seized by police is a mixed question of law and fact). Accordingly, we defer to the
14       trial court's finding of fact but review its legal conclusions de novo. This means
         that unchallenged findings of fact are verities on appeal, and where substantial
15       evidence supports challenged findings of fact, those facts are binding on appeal.
         *State v. Broadway,* 133 Wn.2d 118, 131, 942 P.2d 363 (1997). Substantial
16       evidence is evidence sufficient to "persuade a fair-minded, rational person of the
         truth of the finding." *State v. Hill,* 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Yet,
17       whether the facts indicate that the defendant was in custody is a legal question we
         review de novo. *Solomon,*  114 Wn. App. at 788-89. We address both inquiries in
18       turn.

19   B.  Factual Inquiry

20       Steele does not challenge the trial court's finding that he "voluntarily agreed to
         meet with the detective" at the grocery store, that he affirmatively "called the
21       detective" when he arrived, or that he "voluntarily agreed to show the detectives
         where he claimed that he had last seen the stolen police property that they were
22       looking for." CP at 69, 70. Unchallenged findings of fact are verities on appeal.
         *Broadaway,*  133 Wn.2d at 131.

23

24

REPORT AND RECOMMENDATION - 10

Steele challenges the trial court's conclusion of law that his "interaction with law enforcement was a voluntary, consensual, and cordial social contact that free of coercion." CP at 72. This putative conclusion of law is actually a finding of fact, and we analyze it as such. *See Willener v. Sweeting,* 107 Wn.2d 388, 394, 730 P.2d 45 (1986). We hold that the finding is supported by substantial evidence. The police never told Steele he had done anything wrong. The police never told Steele that he had to meet with them, or that he would be arrested if he failed to do so. Rather, Steele testified that he spoke with the police because he was "trying to do what [he] believe[d] was the right thing at the time" and that he wanted to "clear the air." RP (Mar. 19, 2013) at 78, 80. Therefore, as the trial court found and Steele did not contest, Steele voluntarily agreed to meet with the detectives at the grocery store. On the day of the meeting, Steele came to the parking lot and affirmatively contacted the police to let them know that he had arrived. Steele affirmatively volunteered the location of the truck stop where he claimed the stolen items were located, and offered to take the police there and show them.

Steele did testify that the police knocked on his doors and windows during their initial attempt to contact him at his home, and that he feared the police would beat him up. But in light of the evidence that Steele voluntarily participated in the police's search for the stolen items, a fair-minded, rational person could reject Steele's bare assertion that he thought he would be beaten up if he did not comply. *See Hill,* 123 Wn.2d at 644. We hold that the trial court's findings were supported by substantial evidence.

Steele also challenges the trial court's finding that "[a]t no point ... did anyone engage in any direct or implied threats, promises, or coercive conduct in order to get the defendant to (a) meet for an interview, (b) go to the truck stop to show the detectives where he claimed he had left the stolen property, or (c) go to the police station to give a formal taped interview." CP at 71. For the same reasons described above, substantial evidence existed for the trial court to conclude that the police did not coerce Steele into speaking with them. We hold that the challenged findings of fact are binding on appeal.

C.  Legal Inquiry

Custody exists only if a reasonable person in Steele's position would have believed that he was in police custody "with the loss of freedom associated with a formal arrest." *State v. Lorenz,* 152 Wn.2d 22, 37, 93 P.3d 133 (2004).

Here, a reasonable person in Steele's position would not have believed that he was in police custody during the search for the stolen items. Steele voluntarily agreed to meet with the police, affirmatively came forward to contact the police on the day of the meeting, and voluntarily agreed to show the detectives where he claimed the stolen items could be found. Steele had not been accused of any wrongdoing and would not have been arrested if he had refused to cooperate. Steele's freedom was not curtailed during his interactions with the police; instead,

he cooperated with the investigation of his own accord, because he wanted to do the right thing. We hold that Steele was not in custody until the detectives took him to the police station and gave him *Miranda* warnings.

Steele also argues that his pre-warning statements tainted his post-warning statement at the police station. We reject this argument because Steele's pre-warning statements were voluntary and not the product of custodial interrogation, and the trial court properly admitted Steele's pre-warning statements. We hold that the police did not violate Steele's *Miranda* rights, and we affirm his convictions.

Dkt. 15, Exhibit 12 at 4-8, state court footnotes omitted.

Petitioner has not shown that the state court's ruling as to when the questioning became custodial was contrary to or an unreasonable application of clearly established United States Supreme Court authority, or that the ruling was an unreasonable determination of the facts. For the reasons expressed by the Washington Court of Appeals, the circumstances of petitioner's interaction with police detectives support the conclusion that petitioner was not "in custody" until he was taken to the police station. There is no evidence that petitioner was in custody or subjected to a custodial interrogation during his meeting with police officers at the grocery store and truck stop, which petitioner initiated. The record reflects that petitioner voluntarily agreed to meet the detectives at the grocery store. Dkt. 15, Exhibit 2 at 31-35. Then, on the day of the meeting, petitioner went over to the detectives to let them know that he had arrived. *Id.* at 34, 66-67, 156. Petitioner then volunteered the location of the truck stop where the items were located and offered to take the detectives there. *Id.* at 35-37, 157-58. Petitioner agreed to be frisked for weapons, he was not handcuffed or restrained and the unmarked police vehicle did not have any partition or cage on the inside. *Id.* at 36-37, 53. While at the truck stop, the detectives took turns searching for the missing items while petitioner remained in the car. *Id.* at 38-39, 160-61. Although in his petition, petitioner argues that he was "expressly questioned" by one of the detectives, Dkt. 8 at 6, he provides no facts to demonstrate that he was subject to a custodial

interrogation or that his freedom was restrained in any way. As noted above, a custodial

interrogation is "questioning initiated by law enforcement officers after a person has been taken

into custody or otherwise deprived of his freedom of action in any significant way." *Thompson,*

516 U.S. at 107 (*quoting Mathiason,* 429 U.S. at 495). A person is not in custody for purposes of

*Miranda* if there is no "formal arrest or restraint on freedom of movement of the degree

associated with a formal arrest." *Beheler,* 463 U.S. at 1125, (*quoting Mathiason,* 429 U.S. at

495). Under these facts, no *Miranda* warning was necessary.

Furthermore, petitioner has not shown that the state court's ruling as to his post-*Miranda*

statements were involuntary. Petitioner does not cite to any portion of the state court record in

support of this claim, nor does he describe in his petition any statements that he believes were

coercive. Instead, petitioner states that he was asked to "'voluntarily' go to the police station

where he was formally arrested and advised of his *Miranda* rights for the first time where upon

he gave a formal statement." Dkt. 8 at 6. The record confirms that at the police station, petitioner

was asked to give a formal statement, which he agreed to do. Dkt. 15, Exhibit 2 at 40-41, 161-

162. Petitioner was read a *Miranda* advisement by detective Hoisington and petitioner stated that

he understood his rights and then proceeded to speak with detectives. *Id.* at 40-41, 43. The

detectives read petitioner his *Miranda* rights a second time before petitioner's interview was

recorded. *Id.* at 44, Dkt. 15 at Exhibit 7. There are no facts demonstrating that petitioner was

forced to give his statement. Nor did petitioner ask for a lawyer or state that he wanted to stop

the questioning. *Id.* at 45. A coerced confession is one in which, under "the totality of the

circumstances, the government obtained the statement by physical or psychological coercion or

by improper inducement so that the suspect's will was overborne." *United States v. Leon*

*Guerrero,* 847 F.2d 1363, 1366 (9th Cir. 1988) (*citing Haynes v. Washington,* 373 U.S. 503,

REPORT AND RECOMMENDATION - 13

1    513–14 (1963)). The evidence in this case is undisputed that petitioner voluntarily agreed to go

2    to the police statement, was advised of his *Miranda* rights and made the statements. There is no

3    evidence that his will was overborne.

4         Thus, the state court's conclusion that these facts, when considered together, were

5    sufficient to support a finding that petitioner was not "in custody" until he was taken to the

6    police station and that petitioner was subsequently advised of his *Miranda* rights and voluntarily

7    waived those rights was not objectively unreasonable based on the evidence presented at trial.

8    Accordingly, the Court finds that the Washington Court of Appeals' decision upholding

9    admission of petitioner's statements was not contrary to, or an unreasonable application of,

10   clearly established Supreme Court precedent. The Court should deny petitioner's first ground for

11   relief.

12        **2.  Sentencing Alternative**

13        In his second ground for relief, petitioner argues that the trial court erred when it failed to

14   consider a DOSA. Dkt. 8 at 8. Petitioner argues that he qualified for a DOSA because he was a

15   non-violent offender. *Id.*  Respondent argues that this ground presents a state law issue and

16   therefore, petitioner fails to present a federal constitutional ground for habeas relief. Dkt. 14 at 8-

17   9.

18        Under Washington law, the sentencing judge can impose a DOSA alternative in lieu of a

19   standard prison sentence for eligible defendants. RCW. 9.94A.660. If an offender is sentenced to

20   a prison-based DOSA, the DOSA will include a prison term, including substance abuse

21   treatment, for one-half of the standard sentencing range and community custody following prison

22   term. RCW 9.94A.662(1). If the offender violates the conditions of his sentence or fails to

23

24

1    complete the substance abuse treatment, his DOSA may be revoked and the offender can be

2    ordered to serve the remainder of his term in prison. RCW 9.94A.662(3).

3            At petitioner's sentencing hearing, the State recommended that the trial court impose a

4    prison term of 159 months, which was the low end of the standard range but urged the trial court

5    not to impose a DOSA. Dkt. 15, Exhibit 5 at 381-84.  In its recommendation, the State

6    highlighted that petitioner had several chances to participate in substance abuse treatment and

7    that petitioner's current crimes did not appear to be related to drug use. *Id.* at 382-83. Counsel for

8    petitioner requested a DOSA of a 94-month prison term and 94 months of community custody.

9    *Id.* at 384-88.

10           The Washington Court of Appeals rejected petitioner's argument that the trial court

11   abused its discretion:

12           [T]he [trial court] judge took Steele's particular circumstances into account. At
             Steele's sentencing hearing, the State pointed out that Steele had already had
13           multiple opportunities to engage in substance abuse treatment. The court reviewed
             notes from a previous conviction after which Steele had also asked for a DOSA.
14
             After taking this information into account, the court stated:
15
                     Mr. Steele knew what his issues were. He knew when he asked for the last
16                   DOSA that if he didn't change his ways, and specifically the examiner
                     said if he doesn't stop hanging with people that get him to use once again
17                   and cause him to relapse, he'll be right back in the system. Those were
                     prophetic words in 2007 when they were spoken.
18
             RP (Apr. 30, 2013) at 391. The court reviewed Steele's history relating to
19           addiction and crime, relied on that information, and made a determination on the
             record that Steele should not receive a DOSA. Although the court also stated that
20           "I also believe that people who have offender[ ] [scores] that exceed nine
             shouldn't get the benefits of leniency," there is no indication that Steele's
21           offender score was the primary reason the court denied the DOSA. RP (Apr. 30,
             2013) at 391. The court expressly relied on Steele's failure to take advantage of
22           prior treatment opportunities and to heed the advice of his examiner in a previous
             case. We hold the trial court did not abuse its discretion by denying the DOSA.
23
     Dkt. 15, Exhibit 12 at 9-10.
24

1    "[I]t is not the province of a federal habeas court to reexamine state court determinations

2    on state law questions." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *See also* 28 U.S.C. §

3    2254(a); *Langford v. Day,* 110 F.3d 1380, 1389 (9th Cir. 1996) ("We accept a state court's

4    interpretation of state law, ... and alleged errors in the application of state law are not cognizable

5    in federal habeas corpus."). State sentencing courts must be accorded wide latitude in their

6    decisions as to punishment. *See Walker v. Endell,* 850 F.2d 470, 476 (9th Cir. 1987), *cert.*

7    *denied,* 488 U.S. 926, *and cert. denied,* 488 U.S. 981 (1988).  Generally, therefore, a federal

8    court may not review a state sentence that is within statutory limits. *See id.* Federal courts must

9    defer to the state courts' interpretation of state sentencing laws. *See Bueno v. Hallahan,* 988 F.2d

10   86, 88 (9th Cir. 1993).

11       In order to state a cognizable federal claim, petitioner would have to show that his

12   sentence was arbitrary or capricious, based on impermissible classifications, or fundamentally

13   unfair.  *Christian v. Rhode,* 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental

14   unfairness, a state court's misapplication of its own sentencing laws does not justify federal

15   habeas relief."). *See also Makal v. Arizona,* 544 F.2d 1030, 1035 (9th Cir. 1976) ("So long as the

16   type of punishment is not based upon any proscribed federal grounds such as being cruel and

17   unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violations

18   of state statutes are matters of state concern.").

19       Here, Washington's interpretation of its own sentencing laws is purely a matter of state

20   law and petitioner has not cited any federal case law to support his arguments to the contrary.

21   Dkt. 8 at 8. Petitioner has not shown that the trial court's decision to reject his request for a

22   DOSA was arbitrary or capricious, based on impermissible classifications, or fundamentally

23   unfair. *See Christian,* 41 F.3d at 469. The record reflects that the trial court judge considered

24

1    petitioner's prior crimes, offender score and prior drug use when it refused to grant petitioner a

2    DOSA. Dkt. 15, Exhibit 5 at 391. Further, the Washington Court of Appeals also concluded that

3    petitioner should not receive a DOSA because of petitioner's history. Dkt. 15, Exhibit 12 at 9-10.

4    The Washington Court of Appeals noted that the trial court's reason for denying petitioner a

5    DOSA was not primarily based on his offender score because the trial court expressly relied on

6    petitioner's failure to take advantage of prior treatment opportunities. *Id.* Because petitioner has

7    failed to show the state courts' decisions were arbitrary or fundamentally unfair, his claim that

8    the trial court abused its discretion in rejecting his request for a DOSA under RCW 9.94A.660 is

9    not cognizable on federal habeas review. *See Christian,* 41 F.3d at 469.  Petitioner is not entitled

10   to federal habeas relief on his second ground and the undersigned recommends that the Court

11   deny this claim.

12        **B.     Certificate of Appealability**

13        A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

14   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

15   (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

16   has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

17   2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

18   disagree with the district court's resolution of his constitutional claims or that jurists could

19   conclude the issues presented are adequate to deserve encouragement to proceed further."

20   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

21   (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

22   certificate of appealability with respect to this petition.

23

24

1

**CONCLUSION**

2        The Court finds that petitioner failed to show that the state courts' adjudication of his

3   habeas claims was contrary to, or an unreasonable application of, clearly established federal law.

4   Thus, the undersigned recommends that the habeas petition be denied. The undersigned also

5   recommends denying the issuance of a certificate of appealability.

6        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

7   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

8   6. Failure to file objections will result in a waiver of those objections for purposes of de novo

9   review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

10  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

11  **April 22, 2016** as noted in the caption.

12       Dated this 25th day of March, 2016.

13

14       J. Richard Creatura
         United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24